## ISEMAN v. McMILLAN.

1. DEED AT JUDICIAL SALE.—A sheriff having sold land under a decree of the Probate Court, made his deed to the bidder for life, with remainder to others, taking from the bidder a mortgage of the land, as required by the decree. Under decree of foreclosure of this mortgage in action to which these remaindermen were not parties, the purchaser at

the sale took good title, as the sheriff had no power to make deed under the probate decree except to the purchaser in fee.

2. Ibid.—Recording.—The record of this sheriff's deed gave no rights to these remaindermen superior to the mortgage, nor binding upon the court in the action of foreclosure.

3. Fraud—Innocent Purchaser.—A complaint which sought to recover from the purchaser at the foreclosure sale an interest in this land on the ground of fraudulent collusion between mortgagor and mortgagee, in the foreclosure proceeding, to enforce a sale under a satisfied mortgage, does not state facts sufficient to constitute a cause of action, there being no allegation of collusion or knowledge on the part of defendant, the purchaser.

4. Inconsistent Averments.—A complaint is bad on demurrer which alleges in one place that a bond was paid, and in another place that it was paid or nearly so. Section 180 of the Code requires liberality in construing the allegations of a complaint, but does not permit allegations of fact in the alternative.

Before Fraser, J., Marion, April, 1891.

This was an action by Sarah Iseman against W. C. McMillan and others, and continued after the death of said McMillan against his representative and heirs. The judgment of the Circuit Court was as follows:

The words of this deed to Gewood Berry do not create a fee conditional. The rule in Shelly's Case for convenience will be found in *Porter* v. *Doby*, 2 Rich. Eq., 49, and 1 Co., 104. When, however, the words, "heirs of the body," are followed, as here, by the further words, "and their heirs and assigns forever," the words, "heirs of the body," are mere *descriptio personœ*, and the heirs take as purchasers and not by way of limitation. *Dott* v. *Willson*, 1 Bay, 453. There can be no clearer case in which the word "heirs" must be held to be merely descriptive than in this case, because they were expressly named in the deed.

It is hardly worth while to cite an authority for the proposition, that the life tenant on the birth of issue can alien or encumber the estate, and that while he cannot devise it, it will be liable for his debts while alive and liable as any other part of his estate after his death. *Burnett* v. *Burnett*, 17 S. C., 545. The more difficult question is, whether John and William Berry, and the others named as heirs of the body, can take under this deed as

remaindermen.   No authority has been brought to my attention
which is full to the point.    In analogy to the rule laid down in
*Bogie* v. *Rutledge*, 1 Bay, 307, as to the claim of dower in cases
of mortgages given to secure the payment of the purchase money,
I think the mortgage to secure the payment of this purchase
money bond is paramount to any claim on the part of the remain-
dermen.    The instantaneous seizin should no more make the re-
mainder good against the mortgage than it can make the claim of
dower good in such cases.    In fact, the execution of the mort-
gage is one of the conditions on which any estate at all is con-
veyed in such cases.

It seems to me that these remaindermen may perhaps have
rights which the life tenant would not be permitted to deny when
set up as against him, but so far as the mortgagee is concerned
(in this case the officer of this court and those who claim under
him), these remaindermen can have no rights whatever.    There
was no authority given to the sheriff by the order of sale to con-
vey anything more or less than a fee simple to the purchaser
which was to be the subject of a mortgage to secure the deferred
payments without the encumbrance of having to make the re-
maindermen parties in an action to foreclose, and it seems to me
that the court should have the right, either to disregard these
limitations or then have the deed corrected, either for the benefit
of those interested in the fund or of the purchaser at the foreclos-
ure sale, so as to make it conform to the requirements of the
order of sale and carry a fee simple title.

I can well see how in this case Gewood Berry and Thomas W.
Godbold, the administrator *de bonis non cum testamento annexo*,
and E. H. Gasque, when this bond and mortgage were trans-
ferred, could have committed a fraud on these remaindermen, if
the mortgage debt had been fully paid.    There is no distinct alle-
gation in the complaint on this subject.    I can only construe it
to assert with sufficient certainty that nearly all the debt was
paid and what remained unpaid was inconsiderable in amount,
and any amount is for this purpose as the whole.    It does not
appear in the complaint that there was any order confirming the
report on sale, or that the terms of this conveyance to Gewood
Berry was in any way brought home to the attention of the court

or of the parties interested in the estate. The record of the deed in the register's office is notice to subsequent purchasers and creditors and nothing else. Purchasers under the foreclosure sale were bound to look only to the order of sale and the mortgage under the order of the court and which covers the fee simple. While, therefore, any portion of the mortgage debt remained due, it was properly foreclosed in an action without making any of these remaindermen parties to the proceedings, and they have no right to set up any irregularity or even fraudulent scheme, such as is here alleged, in order to defeat the rights of a purchaser who is not alleged to have been a party to or cognizant of the alleged scheme.

I see that the case is not free from difficulties, but I must hold as a matter of public policy and good law, that when a mere executive officer of the court undertakes, on his own authority, to add limitations to a deed even with the consent of the purchaser, which in any way encumber the rights of the parties in interest in the fund arising from the sale, such limitations are void as to all persons other than such purchaser or his privies in estate, and in the action to foreclose the mortgage given to secure the deferred payments, such remaindermen may be disregarded.

It is therefore ordered and adjudged, that the demurrers be sustained and the complaint dismissed with costs.

*Messrs. Sellers & Sellers,* for appellant.

*Messrs. W. W. Harllee* and *C. A. Woods,* contra.

March 29, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. Sarah Iseman brought her action in the Court of Common Pleas for Marion County against the executor, &c., and heirs at law of W. C. McMillan, deceased, E. H. Gasque, E. Burke Berry, Ashton E. Berry, and Thomas W. Berry. In her complaint she alleges, amongst other things, that Thomas Godbold died testate in 1836, and that as a part of his estate, there was a small lot of land in the town of Marion, containing one-quarter of an acre; that in 1870, under proceedings had in the Probate Court for Marion County, begun for that purpose by

Thomas W. Godbold, as administrator *de bonis non cum testamento annexo*, of Thomas Godbold, deceased, such lot was ordered to be sold by the sheriff of Marion County for one-third in cash and the remaining two-thirds on a credit, to be secured by the bond of the purchaser, with a mortgage of the said lot of land; that at such sale, Gewood Berry became the purchaser, paying one-third in cash and giving his bond and mortgage to secure the credit portion, which was $671.33, and the said Gewood Berry induced the sheriff, in his deed for same, to convey "to the said Gewood Berry for life, and at his death to the heirs of his body, to wit, John Berry, William G. Berry, Burke Berry, Ashton Berry, and Thomas W. Berry, and their heirs and assigns forever," all of whom were then minors; that the deed and mortgage were duly recorded; that M. Iseman, under judgments obtained against John Berry and William G. Berry, respectively, and a sale to satisfy the same, purchased all the estate of said John and William Berry in said lot of land in 1878 and 1880, respectively, and that his deeds therefor were duly recorded; that subsequently, the plaintiff, Sarah Iseman, purchased at sheriff's sale all the estate of M. Iseman in said lot of land; that the bond and mortgage executed by Gewood Berry were assigned by the judge of probate for Marion County to Thomas W. Godbold, as administrator *de bonis non cum testamento annexo*, &c., and by the latter, for alleged value, assigned to E. H. Gasque on 10 October, 1880, and on the next day thereafter E. H. Gasque, as plaintiff, brought his action to foreclose the mortgage against Gewood Berry, as defendant, in the Court of Common Pleas for Marion, which suit ripened into a judgment on 26 November, 1880, for $1,225.94, and the lot of land was ordered to be sold on 6 December, 1880, and was sold by the master for Marion County on that day, being bid off by E. H. Gasque for $520, and W. C. McMillan being substituted for Gasque as purchaser, title was made to W. C. McMillan for said lot, who went into possession of the same; that E. H. Gasque entered satisfaction of the mortgage executed by G. Berry on said lot in the office of register, &c., on 16 April, 1881; that within the two years preceding the commencement of this action by Sarah Iseman, she first learned that the sale made in December, 1880, was a scheme of the mort-

gagor, Gewood Berry, to defeat M. Iseman in his purchase of the interest of his two sons, John and William, as two of his remaindermen under the deed of 1870; that E. H. Gasque and Thomas W. Godbold, as administrator, &c., lent themselves in aid of the said G. Berry to consummate the fraud; that G. Berry died in February, 1885. By one allegation of the complaint, G. Berry's bond had been fully paid before December, 1880; but by another allegation of the complaint, G. Berry had fully, or nearly so, paid said bond in December, 1880. Therefore she prays that the deed to W. C. McMillan, under the foreclosure suit of Gasque against Gewood Berry, be set aside as fraudulent; that McMillan may account for the rents and profits; that a writ in partition may issue, so that she have her two-fifths of said lot, and for costs.

The defendants interposed a demurrer, that the complaint does not state facts sufficient to constitute a cause of action; one defendant, Gasque, adds an additional ground of demurrer, because he was not a proper party to the action. Judge Fraser heard the action upon the complaint and demurrers at the April term, 1891, in Marion, and on the 27th April, 1891, filed his decree sustaining the demurrers with costs. From this decree the plaintiff appeals to this Court upon seven grounds of appeal, as follows:

1. Because his honor erred in saying that "there is no distinct allegation in the complaint on this subject" (payment of the mortgage debt). It is submitted that in paragraph fourth of the complaint there are two distinct allegations, that said bond and mortgage had been long since paid—paid at or before maturity.

2. Because his honor erred in construing the alternative language on the subject of payment, in its second allegation, against the pleading. It is in violation of section 180 of the Code of Procedure.

3. Because his honor erred in his "analogy to the rule laid down in *Bogie* v. *Rutledge*, 1 Bay, 307, as to the claim of dower in cases of mortgages given to secure the payment of the purchase money." It is submitted that the analogy is only partial, incomplete, and imperfect.

4. Because his honor erred in not holding that the record of the deed was notice to the judge of probate (if he had not actual

notice), and to every one else who in any way dealt with the estate subsequent to the record of the deed.

5. Because his honor erred in holding that purchasers under the foreclosure sale were bound to look only to the order of sale and the mortgage under the order of the court, and which covers the fee simple. It is submitted that the purchasers were bound to look to the whole record and not to a part of it only, to look to the various deeds affecting the title to the land he was purchasing; further, to see if all proper parties were before the court, subsequent purchasers or encumbrancers.

6. Because his honor erred in holding that the mortgage covers the fee simple, when a life estate was all that the mortgagor had, and was all that he could convey by way of mortgage, and was all that was or could be sold at the foreclosure sale, and all that was purchased.

7. If the mortgage debt was paid, as it is distinctly alleged that it was, then the title to the remaindermen was perfect, and the deed to them being on record, the purchasers had notice of their title, and were bound to see not only that the court had jurisdiction of the subject-matter, but that all proper parties were before it, and his honor should have so held, and his not so holding was error.

In our consideration of these several grounds of appeal, they will not be considered in their order.

We have thus presented for our decision one of the most curious cases on record, but such as it is, we will meet it. The complaint here presents only one cause of action. The demurrer admits, for the time being, the facts as alleged in the complaint. We must, therefore, from these facts determine the issue as to the sufficiency of such facts to constitute a cause of action. The object of the action is to vacate the judgment of foreclosure, the sale thereunder, and then that the lot of land may be so partitioned that plaintiff may receive two-fifths thereof. The inducements for such result are: 1. That plaintiff had obtained vested rights in said lot before its attempted sale under the foreclosure proceedings. 2. That there was a fraudulent combination between Gewood Berry, E. H. Gasque, and Thomas W. Godbold, as administrator, &c., of Thomas Godbold, deceased, to defeat

3—36

plaintiff's rights. 3. That such fraudulent combination consisted in foreclosing a mortgage given to secure a bond that had already been paid or nearly paid, under which W. C. McMillan obtained his title to such lot.

1. Had the plaintiff vested rights in such lot before its sale in December, 1880 ? Unquestionably she was entitled to all the rights of M. Iseman, but no greater than his, and through M. Iseman she was entitled to all the rights which had vested in John Berry in 1878, and also those of William G. Berry in 1880. *Starke* v. *Harrison*, 5 Rich., 7. Had John Berry or William G. Berry any vested rights in such lot ? The answer to this question is important, and is not free from difficulty. Under the view we entertain in regard to the sale made to Gewood Berry in 1870 by the sheriff of Marion County, it was limited by the judgment of the Probate Court of such county in the action then instituted by Thomas W. Godbold, as administrator, &c., of Thomas Godbold, deceased ; the title to such lot of land was vested by law in the heirs at law of Thomas Godbold, deceased, until the same was divested by a compliance by Gewood Berry, the purchaser, with all the terms required in such judgment of the Probate Court. *Burris* v. *Gooch*, 5 Rich., 5. Any attempt on the part of the sheriff at that sale to vary the terms of that judgment, was a nullity ; his agency was specific, and all persons dealing with him, in connection with a sale to be made under that judgment, were bound by its terms. In fact, the judgment for the sale embodied the contract with the purchaser at such sale.

As was said by this court touching a sale made by the sheriff as the agent of the court in *Orr* v. *Orr*, 7 S. C., 384 : "It may not be out of place to remark that the order for the sale of the Orr land did contemplate the execution of a deed to the purchaser on his complying with the prescribed conditions, and his investiture with whatever title such a bare instrument would convey. This is apparent from so much of the terms as required the purchaser to execute a mortgage for the credit portion of the bid, for to give effect to such an instrument he must at least have had the naked title." It was in the power of the court, when the sale was made by the sheriff in 1870 to Gewood Berry to enforce a

compliance with the terms of its order or judgment for the sale, either by rescinding the sale, by reselling the property, or by bringing an action for the price. *Burris* v. *Gooch*, 5 Rich., 5. Nor is it at all inconsistent with the rule there laid down for the court to disregard any injection by its officer of foreign matter into such deed.

But it is claimed, admitting the palpable disregard of duty by the sheriff in inserting a life estate only to Gewood Berry, with a remainder over to his five sons, who were then minors, in his deed to Berry, such deed was placed on record in accordance with the registry laws of this State, and two results flow therefrom : *First.* Such children of Berry are invested with the fee of such land subject only to the enjoyment of G. Berry's life estate therein, which terminated at his death in 1885 ; and, second, the record of such deed was notice to all the world. We are not dissatisfied with the views expressed by the Circuit Judge in construing this deed, that if it be allowed by law to operate as to all the world, it would have carried the fee to these five sons of Gewood Berry, subject, of course, to his life estate therein, but for the reasons we have advanced it never could operate in their favor. As to the *second.* We need only say that the object of all registry laws is to give notice of certain written instruments to certain classes of persons, amongst which classes judges of courts, as such, are not included. The complaint was faulty in these allegations.

2. That there was a fraudulent combination between G. Berry, E. H. Gasque, and Thomas W. Godbold, as administrator, &c., of Thomas Godbold, deceased, to defeat the rights of the plaintiff in this lot of land. Thomas W. Godbold is not made a party to this action. G. Berry is dead, and his personal representative, as such, is not made a party to this action. E. H. Gasque alone, of the three alleged confederates, is a party here. Now, to affect the land in the hands of McMillan's heirs at law, it is submitted that some participation in such fraudulent combination by McMillan was necessary. He was a purchaser at a judicial sale ; there is no allegation that the price paid by him for the land was inadequate, that the bidding was chilled. It is true this court has laid down with care the rules whereby a

purchaser at a judicial sale must be governed to free himself of liability. He is bound to inquire that the court ordering the sale has jurisdiction of the subject-matter, and that all necessary par-ties are before the court. *Trapier* v. *Waldo*, 16 S. C., 282; *Cathcart* v. *Sugenheimer*, 18 *Id.*, 126; *Tederall* v. *Bouknight*, 25 *Id.*, 279; *Ruff* v. *Doty*, 26 *Id.*, 173. But it has never yet been held that a secret vice, such as fraud locked up in the breast of some parties to a suit, of which the purchaser at a judicial sale has no knowledge or information, can be affected thereby; and in the case at bar there is an entire absence in the allegations of the complaint of any imputation of unworthy conduct on the part of W. C. McMillan. It is no part of the object of the plaintiff to subject the defendant, E. H. Gasque, to any judgment. The complaint in its allegations is faulty here.

3. That the fraudulent combination referred to in the second division of this discussion, consisted in foreclosing a mortgage given to secure a bond that had already been paid or near-ly paid, and that McMillan purchased under such fore-closure. A question of practice is a preliminary inquiry here. It involves this question: Is it correct pleading to allege in the same cause of action two contradictory allegations? But let us state these allegations from the complaint itself: "Fourth. Plaintiff alleges that said purchase money bond [G. Berry's bond made in 1870] had been long since paid at or before maturity by G. Berry, the obligor, although no credit appeared upon the bond and no satisfaction had been entered thereon. * * * Plaintiff alleges that said bond and mortgage was paid at or before the maturity of the same, or was very nearly all paid in full. If any-thing was due on same, it was a very inconsiderable amount."

This court in *Hammond* v. *Railroad Company*, 15 S. C., 28, said: "In Childers v. Verner & Stribling, 12 S. C., 8, Mr. Justice McIver said: 'The rule is, that while a plaintiff may combine in one complaint several distinct causes of action, yet these different causes of action must be stated separately, in order that the defendant may plead to them separately, if necessary or desirable.' It would seem to follow, as a necessary supplement to this, that the causes thus stated separately should each contain in itself the necessary averments to support it." Both these cases,

it is true, were where two causes of action were set up in the same complaint, and it was in contention in those cases as to how far averments might be borrowed, so to speak, by one cause of action from another in the same complaint, but the principle as to correct pleading is brought out in strong relief in each, that the necessary averments in a cause of action are such as will develop the issues involved.

Plaintiff here concedes that if anything was due on the bond of Gewood Berry in 1880, when a foreclosure of the mortgage was had, such action was proper. Thus, it becomes important to see if the allegations of her complaint on the subject of the bond of Berry set out payment. It is true, in the 4th paragraph she twice says the bond was paid, and yet in the *same paragraph* she alleges that it "was very nearly all paid in full. If anything was due, it was a very inconsiderable amount." When the defendants come to answer, they have a legal right to demand of the plaintiff what are her averments in the complaint, necessary, as she herself admits, to the cause of action. When these averments are in the *alternative*, we hold that it is a good ground of demurrer, and that section 180 of the Code, which requires great liberality in construing the allegations in a complaint, to the end that substantial justice may be done, never contemplated that such liberality should be shown to allegations of fact in the alternative—that they are true or are not true—because subversive of the true object of pleadings, viz., that thereby clearly defined issues of fact be involved.

The purchaser, in looking into the subject-matter of the action for foreclosure in 1880, found that the bond had no credits endorsed thereon, that the mortgage was unsatisfied both on its face and on the record thereof, that the plaintiff was the assignee of both, that the obligor of said bond, who executed the mortgage, was a party to the suit, was in possession of the lot of land covered by the mortgage, and did not deny that there was due on such mortgage more than $1,200. Under these circumstances, we overrule all the exceptions to the Circuit decree, thereby fully sustaining such decree.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.